IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMAL HINTON,                           :
    Plaintiff,                           :
                                         :
    v.                                   :        CIVIL ACTION NO. 26-CV-1674
                                         :
SUNRISE SENIOR LIVING, LLC,              :
    Defendant.                           :

## MEMORANDUM

WEILHEIMER, J.                                               MAY 14, 2026

Plaintiff Jamal Hinton filed this civil action against his former employer, Sunrise Senior Living LLC, The Quadrangle ("Sunrise"), claiming that his rights under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, were violated and that he was discriminated against when he was terminated from his employment following a failed background check. He seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Hinton leave to proceed *in forma pauperis* and dismiss his Complaint.

## I.    FACTUAL ALLEGATIONS[1]

Hinton alleges that he accepted a job offer for employment as a full-time cook/server from Sunrise on July 18, 2023. (Compl. at ¶¶ 4, 9, 27.) He was given a "job offer packet" that included an online background check with a third-party provider. (*Id.* at ¶¶ 5-6.) Hinton completed the online background check on July 18, 2023, and when asked if he had been "convicted of a felony or released from prison for a felony in the past year," he answered no. (*Id.* at ¶ 8.)

---

[1] The following allegations are taken from the Complaint (ECF No. 2) and attachments thereto. The Court adopts the pagination supplied by the CM/ECF docketing system.

On August 2, 2023, Hinton was told by Sunrise's executive director that he was being "terminated for having a criminal background [] over 19 years ago." (*Id.* at ¶¶ 10, 29.) Hinton explained that the online background check only asked about his criminal history for the past year which is why he answered no. (*Id.* at ¶¶ 11-12, 30-31, 51.) He also showed the executive director a recommendation letter from his parole officer that indicated his parole was completed in 2015 and he had "been an advent worker with no violations." (*Id.* at ¶¶ 13, 32.) Hinton was told to come back to work the next day, and on August 3, 2023, he was terminated by "HR Director Carol . . . for having a criminal background over 19 years ago." (*Id.* at ¶¶ 14-15, 33-34, 49.)

Hinton filed for unemployment benefits. (*Id.* at ¶¶ 18, 37.) By letter dated October 27, 2023, the Pennsylvania Department of Labor and Industry Office of Unemployment Compensation Benefits acknowledged that Hinton's last day of work was August 3, 2023, and that he was discharged because of a failed background check. (*Id.* at ¶¶ 19-20, 38-39, 52.) Hinton claims that this letter verifies that he "provided accurate information on his background report" that was conducted on July 18, 2023.[2] (*Id.* at ¶ 133.) Hinton was informed that he qualified for unemployment benefits, effective July 30, 2023. (*Id.* at ¶ 20, 52.)

Hinton claims that he was wrongfully terminated by Sunrise on August 3, 2023, asserting that he was terminated "for a background check that he did pass." (*Id.* at ¶¶ 17, 36, 45.) He contends that he was never given or shown a copy of his "FCRA report" and he was unable to verify its accuracy. (*Id.* at ¶¶ 16, 35, 50.) He also alleges discrimination based on his

---

[2] It does not appear from the allegations of the Complaint that Hinton was terminated for providing a false statement. Rather, it appears that Sunrise terminated Hinton after learning that he had a prior felony conviction when a third-party background check was conducted. As detailed herein, Hinton avers that he did not authorize the third-party background check that was conducted after he completed the online questionnaire on July 18, 2023.

membership in a protected class, identifying himself as a "Kemet African American" male, and asserts that "his rights to employment were violated" on account of his criminal background. (*Id.* at ¶¶ 21, 25, 43-44.)  Based on the foregoing allegations, Hinton asserts a FCRA violations, a violation of his civil rights pursuant 42 U.S.C. § 1981, and claims of defamation, fraud, and perjury.  (*Id.* at ¶¶ 22, 25, 40.)

## II.   STANDARD OF REVIEW

Because Hinton appears to be incapable of paying the filing fees to commence this action, the Court will grant him leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Hinton's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  Additionally, dismissal of a complaint based on the statute of limitations is appropriate at the pleading stage provided the "defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)).

Furthermore, the Court must dismiss the Complaint if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Grp. Against Smog and Pollution, Inc.*

*v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.") (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). "Jurisdictional [issues] . . . may be raised at any time and courts have a duty to consider them *sua sponte*." *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (internal quotations omitted).

Because Hinton is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III. DISCUSSION

### A. Federal Law Claims

#### 1. FCRA Claims

Hinton asserts that Sunrise violated the FCRA by terminating his employment based on the results of his criminal background check without providing him with pre-adverse notice, a copy of the background report, or a summary of his FCRA rights. (Compl. at ¶¶ 61-62.) He alleges that he completed an online background check on July 18, 2023, but claims that the online check only covered the past year. (*Id.* at ¶ 69.) Hinton contends that Sunrise did not inform him that it would be conducting a background check that covered more than just the past year, claiming that Sunrise procured an unauthorized FCRA report to terminate him "for having a criminal background over 19 years ago." (*Id.* at ¶¶ 83-86, 132, 148.) He claims that he "never saw the FCRA report of the failed background check" and was not given a copy of the report before his termination. (*Id.* at ¶ 68.)

Hinton asserts several violations of 15 U.S.C. §§ 1681b(b)(2) and (3) of the FCRA. Section 1681b(b)(2) sets standards an employer must follow in obtaining authorization to procure a consumer report:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless: (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

Section 1681b(b)(3) of the FCRA provides that before an employer takes "any adverse action based in whole or in part" on a consumer report, the employer must provide the person who is the subject of the report with "(i) a copy of the report; and (ii) a description in writing of the

rights of the consumer under [the FCRA]." *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 318 (3d Cir. 2018) (quoting 15 U.S.C. § 1681b(b)(3)(A)).  An adverse action includes a denial of employment.  *Id.* (citing 15 U.S.C. § 1681a(k)(1)(B)).  "Criminal background checks are 'consumer reports,' i.e., 'written . . . communication' that bears on 'a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living' and 'is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes. . . .'"  *Id.* (quoting 15 U.S.C. § 1681a(d)(1)).

Under the FCRA, an action may be brought "not later than the earlier of (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs."  15 U.S.C. § 1681p.  In an FCRA case, "[t]he date of discovery by the plaintiff is the date when 'that party possesses all of the material facts necessary to identify a violation.'"  *Manes v. JPMorgan Chase Bank, N.A.*, No. 20-11059, 2022 WL 671631, at *2 (S.D.N.Y. Mar. 7, 2022) (quoting *Trans Union LLC v. Lindor*, 393 F. App'x 786, 788 (2d Cir. 2010)).

"In the context of § 1681b(b)(2)(A) background report issues, courts have held that 'a plaintiff discovers the facts giving rise to [his] claim when [he] learns that the defendant actually procured the background report'" without proper authorization.[3]  *Wirt v. Bon-Ton Stores, Inc.*, 134 F. Supp. 3d 852, 858 (M.D. Pa. 2015) (observing that "the discovery of the actual facts, and

---

[3] Although Hinton asserts that a background report was procured by Sunrise without proper authorization, he attaches to his Complaint a copy of an email that was sent to him by Grace Diangelo on July 18, 2023.  (*See* ECF No. 2 at 42.)  The email indicates that Hinton must complete "background forms" included in the "Background Packet" to proceed with his acceptance of the employment offer.  (*Id.*)  The background forms are not attached to the Complaint.

not the knowledge that those facts give rise to a cause of action, is what causes the statute of limitations to run" and rejecting the plaintiff's argument that the two-year period began to run when "attorneys were able to ascertain the alleged violation") (quoting *Moore v. Rite Aid Headquarters Corp.*, No. 13-1515, 2015 WL 3444227, at *8 (E.D. Pa. May 29, 2015)). "A plaintiff 'discovers [the] facts [that] constitute a legal violation' of § 1681b(b)(3) when [he] becomes aware a defendant relied on [his] consumer report to fire [him] without giving [him] the report or a written description of [his] rights." *Anderson v. Wells Fargo Bank, N.A.*, 266 F. Supp. 3d 1175, 1191 (D.S.D. 2017) (quoting *Mack v. Equable Ascent Fin., LLC*, 748 F.3d 663, 665-66 (5th Cir. 2014) (*per curiam*) (finding that consistent with the "general approach under the discovery rule," the FCRA limitations period begins to run when a plaintiff discovers the facts that constitute a FCRA violation, and not when a plaintiff becomes aware of a violation of federal law).

Accordingly, in this case, the latest possible date for Hinton to discover the facts underlying either a § 1681b(b)(2) or § 1681b(b)(3) violation is his August 3, 2023 termination date, because at that point he learned that Sunrise procured a criminal background report, and took an adverse employment action against him without providing a copy of the report or a written explanation of rights. *Anderson*, 266 F. Supp. 3d at 1191; *see also Milbourne v. JRK Residential Am., LLC*, No. 12-861, 2016 WL 1071569, at *6 (E.D. Va. Mar. 15, 2016) (applying the Fifth Circuit's interpretation in *Mack*); *Datt v. Wells Fargo Bank, N.A.*, No. 19-1216, 2019 WL 5722384, at *4 (N.D. Cal. Nov. 5, 2019) (same); *Yurkovic v. New Jersey Higher Educ. Student Assistance Auth.*, No. 16-5339, 2019 WL 7602361, at *3 (D.N.J. July 15, 2019); *Steed v. Equifax Info. Servs., LLC*, No. 14-437, 2016 WL 7888040, *10-11 (N.D. Ga. July 15, 2016), *report and recommendation adopted*, 2016 WL 7888039 (N.D. Ga. Aug. 31, 2016) (rejecting

7

plaintiff's argument that the statute of limitations began to run when she consulted her attorneys and became more aware of the legal issues).  Because Hinton filed this case to raise his FCRA claims on March 13, 2026, more than two and half years after he was terminated, his FCRA claims are time-barred.

### 2.  Claims Pursuant to 42 U.S.C. § 1981

Hinton contends that "his rights to employment were violated" because of his race and criminal background.[4]  (Compl. at ¶ 44.)  He asserts membership in a protected class, identifying himself as a "Kemet African American/Black man."  (*Id.* at ¶¶ 43, 105.)  Hinton avers that Sunrise violated 42 U.S.C. § 1981 "for intentionally and willfully terminating [him] for a failed background report, which was later proven false by Pennsylvania Unemployment Benefits."  (*Id.* at ¶ 53.)  He claims that Sunrise used a "blanket policy" that was "unposted" and "different" from its online application to terminate him for a criminal conviction that had occurred more than nineteen years ago.  (*Id.* at ¶¶58-59.)  He alleges that "the standard guidelines for an FCRA report [are] seven years and up to 10 years if needed," and he suggests that Sunrise found a background check from nineteen years ago, because "they were looking for a reason to terminate him which is discrimination."  (*Id.* at ¶ 110.)  Hinton contends that "termination of an employee who passed a background check for employment but was told he failed and was terminated for a failed background check is willful discrimination" in violation of his civil rights under § 1981.  (*Id.* at ¶ 60.)  Hinton appears to thus acknowledge that any Title VII claim would be untimely, *see Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (citing 42 U.S.C. §

---

[4] Hinton identifies himself as a convicted felon.  (Compl. at ¶ 44.)  However, a felony conviction is not one of the "racial minorities" covered by § 1981.

2000e-5(e)(1)) (providing a 300 day period to file an EEOC complaint), and thus limited himself to attempting to assert the claim under § 1981.[5]

"To establish a right to relief under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in' § 1981, including the right to make and enforce contracts." *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 569 (3d Cir. 2002) (quoting *Brown v. Philip Morris Inc.,* 250 F.3d 789, 797 (3d Cir. 2001)). "In employment discrimination cases, [§ 1981] claims are subject to the same analysis as discrimination claims under Title VII of the Civil Rights Act of 1964." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009). To survive statutory screening under 28 U.S.C. § 1915(e)(2)(B)(ii), a plaintiff must allege sufficient facts to raise a reasonable expectation that discovery will reveal evidence that his membership in a protected class was "either a motivating or determinative factor" in his employer's adverse employment action against him. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

Hinton has alleged that he is African American, so he meets the first criteria for pleading a § 1981 claim. *Pryor*, 288 F.3d at 569. But that is the only criteria he has met. Hinton must plausibly allege that Sunrise harbored a race-based discriminatory intent when it terminated him on August 3, 2024. *Id.* Yet, while the Complaint brims over with hypotheses related to his termination, those allegations concern his criminal background. No facts alleged in the Complaint support a racially discriminatory intent for Sunrise's actions, and nothing in the

---

[5] Hinton acknowledges that while § 1981 coincides with Title VII, § 1981 does not have any "caps for compensatory and punitive damages" and it provides a "4 year timeline to file . . . directly in Federal Court" without having to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Compl. at ¶ 111.)

Complaint otherwise suggests that racial discrimination was "either a motivating or determinative factor" in his termination. *Connelly*, 809 F.3d at 789. Hinton "has not sufficiently pleaded that his discharge occurred under conditions that suggest unlawful discrimination," so he has failed to plausibly allege an employment discrimination claim in his Complaint. *Santos v. Iron Mountain Film and Sound*, 593 F. App'x 117, 119 (3d Cir. 2014) (*per curiam*) (quotations and citations omitted). Accordingly, Hinton's § 1981 claim is not plausible and will be dismissed with leave to amend if he can allege additional facts to state a plausible claim.

### 3. Civil Claims Based on Criminal Statutes

Hinton cites several federal criminal statutes in his Complaint, namely 18 U.S.C. § 1001 (criminalizing certain false statements); § 1621 (perjury), and § 1623 (false declaration before a grand jury). To the extent he seeks to assert civil liability based on those statutes, his claims are not plausible. Criminal statutes generally do not give rise to a basis for civil liability. *See Brown v. City of Philadelphia Office of Human Res.*, 735 F. App'x 55, 56 (3d Cir. 2018) (*per curiam*) ("Brown alleges that the defendants violated various criminal statutes, but most do not provide a private cause of action."). Indeed, the United States Supreme Court has stated that, unless specifically provided for, federal criminal statutes rarely create private rights of action. *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 377 (1958) (stating that where a statute "contains only penal sanctions for violation of it provisions; in the absence of a clear expression of congressional intent to the contrary, these sanctions should under familiar principles be considered exclusive, rather than supplemented by civil sanctions of a distinct statute"); *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone."). The fact that a federal statute has been allegedly violated and some person harmed does not

automatically give rise to a private cause of action for the injured person. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 689 (1979).

Specifically, § 1001 does not provide a basis for a private cause of action. *See Federal Savings & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 137 (4th Cir. 1987) (holding that no private right of action exists under 18 U.S.C. § 1001); *Mathis v. Philadelphia Elec. Co.*, 644 F. App'x 113, 116 (3d Cir. 2016) (*per curiam*) (concluding that § 1001 does not create a private cause of action). The perjury statute, § 1621, also does not give rise to civil liability. *Howard v. Paye*, 188 F. Supp. 3d 496, 499 (E.D. Pa. 2016) (collecting cases and holding that "Howard cannot state a claim under 18 U.S.C. § 1621 because that federal criminal statute does not give rise to civil liability"). Finally, the grand jury statute, § 1623, does not provide a plaintiff with a private cause of action. *Olexsak v. Jones*, No. 21-20026, 2022 WL 2980985, at *4 (D.N.J. July 28, 2022). Hinton's claims based on these federal criminal statutes will be dismissed with prejudice.

### B. State Law Claims

Because Hinton's federal claims will all be dismissed, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.[6] Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which

---

[6] It is not clear whether Hinton intended to lodge any state law claims. For example, although he refers to "defamation"—a matter of state tort law—he cites a definition in the federal statute for "defamation," related to foreign judgments. (*See* Compl. at 1 (citing 28 U.S.C. § 4101).) This statement does not support a claim to relief. *See Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (stating that a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other" (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))); *Smith v. Comcast*, No. 20-5749, 2020 WL 6888570, at *1 n.2 (E.D. Pa. Nov. 24, 2020) (noting that 28 U.S.C. § 4101 is "irrelevant" unless a plaintiff "possess a judgment from a foreign jurisdiction"). However, to the extent that Hinton intended to bring any state law claims, the Court expresses no opinion on their timeliness or merits.

11

grants a federal district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Section 1332(a) requires "complete diversity between all plaintiffs and all defendants," which "means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Benefit Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he citizenship of an LLC [or other unincorporated entity] is determined by the citizenship of its members." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). It is the plaintiff's burden to establish diversity of citizenship. *See Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Hinton does not allege the citizenship of the parties. Rather, he provides Pennsylvania addresses for himself and Sunrise, which suggests that diversity is lacking. Accordingly, he has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue. *Lincoln Benefit Life,* 800 F.3d at 104. The state law claims will be dismissed for lack of subject matter jurisdiction.

12

## IV.    CONCLUSION

The Court will grant Hinton leave to proceed *in forma pauperis* and dismiss his Complaint.  Hinton's FCRA claims and his claims based on federal criminal statues will be dismissed with prejudice.  No leave to amend will be granted with respect to these claims. Hinton's claims pursuant to 42 U.S.C. § 1981 are dismissed without prejudice, and his state law claims are dismissed without prejudice for lack of subject matter jurisdiction.  Mindful of Hinton's *pro se* status, the Court will grant him an opportunity to file an amended complaint as to any claims dismissed without prejudice in the event he can address the defects the Court has noted as to those claims.  An appropriate Order regarding amendment follows.

BY THE COURT:

_____
GAIL A. WEILHEIMER, J.

13